Good morning. I'm Hugo Tormend, attorney for the appellant, and the primary issue in this case is quite simple. Oh, by the way, you reserved six minutes. The trial court committed a legal error in permitting lawyer Superintendent Mr. Padgett's lawyers to represent his interests, and in fact, in the Mr. Wright's response brief, they concede this point. And I think that this is a legal error because the judge was interpreting the Grady case over the Gilbert case and said, well, once the plaintiff makes an application for the fees, then those fees must be lowered. That is clearly a wrong decision, and that's the basis of what happened after that. And I think that they also demonstrated prejudice in that Mr. Padgett was deprived of his rights to represent himself, and that he had the authority to decide how to proceed with this case taken away from him, and he was also excluded from the settlement terms. So I think that's a clear case of a reversal right there. What about the fees that Mr. Padgett was seeking himself? The ones that the district court said he didn't. Tony, I'm going to call the motions for you, challenging that as well. That is the second argument. The way I see it, the whole process was, in fact, someone has to start again. If the court finds— Well, if we start, can we figure out what the process is? You know, this case was remanded. Yes. Or was it before? Yes. And the issue that was remanded was what? What happened in district court is that Judge Boyard, he looked at the original jury's case motion and said that the fees were due on a given number, so there was some changes in the existing. Were all those fees being sought by the Dallas firm at that point? There were two motions put on before Judge Boyard. The first one was for the work before the Dillings firm got involved, and then the second one was re-advanced by the Dallas firm for that work, and the Dallas firm did not represent Mr. Padgett on his motion, and, in fact, the way we see that now is a client abandonment issue. The state was forcing Mr. Padgett to represent himself on that, which sounds very peculiar. Then you have basically a co-counsel situation with the plaintiff, from, say, applying for part of his fees and the lawyer supporting another part. And was that the procedural cost of the case when it went back? That Mr. Padgett was applying for part of his fees and the Dallas firm was applying for part of the fees? Is that the way it was when it was remanded back? What was remanded was that the award that Judge Boyard made, which did not distinguish who gets what, that made that award, was Mr. Padgett's process? He was processing it a little harder. Like I said, it was a previous counsel, and the substitute lawyers refused to advance the fees that were earned by those previous lawyers. But in any event, getting back to my partner, because the policy is less effective based on the fact that Mr. Padgett was allowed to fire his lawyers, but they were still allowed to represent his interests, I think that that now makes the whole thing defective, and it must be reversed to start again. But in the opposite, were they representing his interests, or were they seeking to obtain the attorney's fees that they were able to gain or earn? Well, I mean, there's a pragmatic answer to that, and then there's a legal answer to that. The legal money, the attorney's fees, belongs to the client. That's not the civil rights answer. So I think pragmatically, of course, the lawyers, they want to assure their own fees, and I think that it's almost fair to say that everybody, even just the court, is at least not fully informed of what the law is, and they were operating on this assumption that, well, it's an attorney's fees award, so of course it goes to the attorneys. So I think that's just a mistake that was made. But they were no longer representing him? Once, yeah. Mr. Padgett went to that October, I think, you can't remember the year, 2013. He went to that hearing and said, well, I'm going to fire my lawyers. The judge said, fine. He said, fire. We'll proceed at the point. We'll let the lawyers keep their fees application. And so at that point, then the judge said, OK, we're going to have two fee applications. Mr. Padgett did not file papers in his own court proceedings, and he didn't have to by the rule of mandate. Court of Appeals says the district court has stated it's reasonable to report why he produced the fees, and Mr. Padgett already has a different charge. And I don't see how that really matters, because the motions have changed. There was no change in the motions. How could a new judge explain the reasoning of a prior judge with that bid? How can you make the PD be expected to do that? Well, I don't really think that that matters. What's the mandate now? I mean, the federal court, I mean, the federal court did not challenge the district judge. Find the reason, tell us the reasons why a judge would have produced the abortion and say, give us the reasons why the award is being reduced. Mr. Padgett had a motion on file, which he's in the promise form, and all we did is have him read that. I mean, if all it is is reading the reasons in the motion, we wouldn't have had to remand it. No, because when Judge Weyer produced the abortion, his original order, he didn't give any reasons why he was reducing it. He just said, well, this is just a case where excessive legal work has been done on a case, so I'm reducing it to five-year judgment or whatever the number was. Right, but the remand was for an explicit issue of the reduction. That's right. And so how was the new judge supposed to do that? Well, that's a good question. But the thing is, that's why I asked for additional papers to be filed for you. No, but the papers that he asked for was just, you know, to make some bigger motions. It wasn't, you know, basically, it's actually supposed to stay with NOAA. Mr. Padgett, if he had filed those, then it would have been exactly the same. I'm sorry, Avalon Judge. I'm not going to file papers that you have ordered us to file. It doesn't work that way. Well, I think what happened is that Mr. Padgett was interested in what happened, and then immediately when Judge Avalon issued another order, he put in a motion for reconsideration, saying, look, I already filed this motion. Please look at it if you want help, but what if a new judge now works? And so I think it's discretion, so no. The concern here is that Mr. Padgett is now pro se, and the district court's concerned, I think. And our concern is that he's not entitled equitably to keep all that money, because the fees were earned by the attorneys. I think you've recognized that. No. Your case is very clear that the board for attorneys keeps all of the client. No, I understand that. We all understand that. But it goes to the client. But the client, the understanding is the client pays the lawyer. No, it's up to the contract. If the lawyers have a contract, and they don't have a contract, then it goes to a quantum heroin safe, whatever. And that's all separate and apart from who gets the money at this point. Mr. Wright, or Mr. White, to check that Mr. Padgett, I mean, assuming that the court is not in a vacancy. So I think, just to summarize it, the two cases, irrespective of what happened in terms of the procedure, it was a clear-earned for the judge to allow. And if Mr. Padgett sends the money to the Cayman Islands, what happens? I think that's just how it is. I mean, you know, that's a great point. They decided that. I mean, I'm a lawyer. And I've been on the other side of this. So I understand what the concern is. But it's a lost cause. So anyways, you know, what happened in terms of the splitting of the motions, I think that is an error. That didn't violate the rule of mandate. The jury is kind of looking at the motions, looking at what motions, what was it required to under the mandate. Because the law says that the judge is entitled to do anything that's not precluded by the mandate. So how was that precluded by the mandate for him to seek another motion? Because he was asking for new proceedings. And all of the attorney's case motions were completed. So they decided to do proceedings. So this is new silence in the same proceeding. Well, I see it differently than you, Your Honor. And then irrespective of how the split, the fact of the matter is that Judge Kavanaugh and the acquirers don't allow those lawyers to represent Mr. Badgett's interests when they were not the lawyers. And finally, there is a significant ambiguity about the report that Judge Kavanaugh issued the award to the plaintiffs. And then after that, he's quote, making the split plaintiffs square. So what we need is, if there's not going to be another remand, is that the opinion of this court needs to be clear that, in fact, that the award was made to Mr. Badgett. Because the state of the paperwork that the district court is using is not correct. All right. Thank you, counsel. I'll let you all decide. This is district time. Your Honor. How is it going to be? It's fine. Please go back and circle yourselves to the jury's choice to write. And I'll thank you for your time. Thank you. Thank you. Thank you. Thank you. Thank you. Your Honor, I think the primary issue of merely a rule that we can dispense with fairly quickly, at least in Mr. Badgett's view, is, as Your Honor has already indicated by your questioning, the district court had inferior power and inferior discretion to ask for within-proof decisions, exactly because the court, the Ninth Circuit, issued a mandate that said, these are the things that need to be done. There needs to be an explanation. And you need to show your work as to how you derive the attorneys fees, the cost. Within that mandate, that's not a new test to the case. The prior test was retired. And therefore, I can say, we have those issues. Indicating he asked how am I supposed to do gold star, am I supposed to do any reduction, or not do any reduction. That's what he asked. And he asked that of only Mr. Badgett. He asked that of all the litigants and all the parties before the court. So our explanation is that Mr. Badgett broke to the court. He continued the same thing. It took two months to allow Mr. Badgett to do that. He issued a briefing order that was fairly explicit. Not only did Mr. Badgett have the right to file his fee motion and his cost motion, but he also had a right to oppose any motions filed before the court. OK, counsel. I know he didn't comply, Mr. Badgett, with the judge's instructions. But what's troubling is the judge dismissing his entire claim, which involved a lot of money, simply for that what could be viewed as a minor violation, which is an extremely severe sanction. The implication is this. And there's a lot of other intermediate sanctions that could have been imposed, rather than just dismissing his entire claim. In addition to that, the imbalance Mr. Badgett raises to issue about this not being a final judgment, so to speak, with respect to Badgett's attorney fee issues. And so if you could address that, it would be helpful, because I don't understand, number one, the severity of the sanction. And number two, that this was actually a final judgment that really wasn't appealable, because another one of the issues that's raised is he didn't time the appeal. Let me address those concerns. I always have questions. All right. The first being, whether or not Judge Pavela provided sufficient time and warning. And in fact, as we put forth in our briefs, he certainly did. This is an issue that was discussed in open court. Mr. Pez was given the citation twice and told that this would be an issue going forward. Then the court issued a briefing order that was very explicit as to what the ramifications would be. And that's one of the factors that one looks at, that courts look at, and they're interested in citations that are in our papers, as to what factors the court should look at in order to determine whether or not this Rule 41 is visible as appropriate. And I think in this case, the record of the hearing, the briefing, and the order itself sufficiently sets forth the parameters and the rationales in providing your owner a warning, in the case law that we cite, means that we have to take a look at other alternatives. And we have a case for that proposition in our papers. So Judge Pavela did that. He went over backwards to try to get this gentleman to have its issue. It is not simply the fact that Mr. Padgett failed to file the papers, but he failed to make the point that he's now attempting to revise on appeal. Meaning, most of the papers should have been, hey, I get all of them. I'm the rightful owner. And these are my motions. My three motions. They're both issues. He didn't do that. So he has the opportunity to do it. But he failed to do so. With respect to your Honor's second question, as to whether or not this is the final order, it's straight out of Judge Pavela's work. This is a Rule 41 order. If he dismissed, that's the issue. The time for that came and went. And there was no appeal filed. Now, I understand that there is an issue of whether or not that he does make an interlocutory appeal. And that's an issue that, I guess, we're going to have to address. But from our perspective, did the judge's Rule 41 order address the issue? It was the finality as to that issue. But that happens a lot. And I think the illustration we saw, or was used, was sometimes people are dismissed out of a case on summary judgment. But that's not final until the case is final. So this kind of partial dismissal really doesn't bring the finality that mandates an appeal. And if that's what the court's going to decide, Your Honor, it still doesn't address the fact that Mr. Padgett did not avail himself of the opportunities provided to him by Judge Daffner. I was forewarned. But what in the case would have still been pending? Now, following the 41B order, what was still pending in the case? Well, ostensibly, as you will hear from my colleagues, the argument is going to be that the law firms had other only attorney fees if you were involved from the start. There were no substantive issues in the case that were pending. That is true from then forward. So all of the procedures before Judge Daffner, that was the indication, Your Honor, there was no substantive issue. It was the issue of what are the fees, what are the costs, and who pays them. Those were the issues that were on remit to Judge Daffner. Another thing that I wanted quickly to highlight for Your Honor, which is consistent with what you are, there's been an argument that Judge Daffner, he used a personality rule somehow that renders his assessment of fees inappropriate in this case. That is not what Judge Daffner did in this case. He goes through the procedure in the Thomas case. He does the two-step analysis. As part of that second step in that analysis, he correctly assesses. Now, one of the things that you need to look at is whether your results, the accomplishments in the case, actually, to be considered, have some sort of relationship with the fees that you're seeking. In this case, we have a nominal award of $1. We had a punitive damages award that was reduced to $10,000. And we had fees of $3.2 million being asked. Does the judge have a properly, by the Thomas case, understood the two-step analysis? So that's the two-seventh analysis. The two-seventh analysis, Your Honor, comes from the summary judgment. One of the things that courts can look at is how successful are you in summary judgment. But did you agree to that, or did your co-counsel agree to the fact that that wasn't a proper way of evaluating attorney fees? From the jurist's perspective, Your Honor, that's an appropriate way of doing something for counsel. Well, yes, the law firms have had issues on that. And the only reason I wanted to speak to that was because when Mr. Curtis wrote his telebrief, that had not been briefed by them. So I said we didn't have an opportunity to address the issue. It only came later on. All right. Thank you, Your Honor. Thank you. Thank you. I thought you were splitting time with Mr. Kalisz. I'm not sure. I'm with another law firm. I'm going to be going to Mr. Kalisz first. If there's any remaining questions, Mr. Kalisz is going to be part of that. OK. So two seconds. They're going to split this time. So let's do four minutes for him and three minutes for Mr. Kalisz. So four minutes on the clock. Otherwise, we lose track of time. OK. All right. Go ahead, counsel. Good morning, Your Honor. I just want to please the Court. My name is Stephen Burkina. I represent Bruce Monte and Gail Yeltsin. The other law firm that was the co-counsel representing Mr. Kadgett in the underlying trial. To answer your question, Your Honor, I was here during the last round. And the Court's mandate was to go back and explain and recalculate the seats. In addition, at that time, Judge Kosinski, I believe, at the time said, look, you can't use proportionality. It's not supposed to be used. And that's the only thing that we have to be concerned about. And the idea that the claims were inextricably interrelated with the successful and the unsuccessful lines of trial. Well, in the seven years that this case has been in the tract of moving the district court to the appellate court, the law has changed. Judge Daffler was using very high, a case that says that once the fees are reported, once they've invested in the client, it has to then belong to the attorneys. But wasn't that a qui tam case? It was a qui tam case. So it wasn't a civil rights case. Those are cases that are totally different, aren't they? It was not a civil rights case. It wasn't a qui tam case. It was a false claims act. And the court, one of the problems, and I think what Judge Daffler was specifically mindful of, was what we were talking about just a moment ago, which is Mr. Paget and his turning of the belief that the money can be taken to the King Islands or wherever. And that equity was something that was discussed with Judge Daffler. And one of the things that Judge Daffler seeing the case for the first time when it came back, I believe on the record, was that on the consent docket, Mr. Paget had been selling the attorney's fees to cash advance companies. And so my office represented Mr. Paget from 2008 through 2015. Judge Daffler, at the time, the law was that attorney's fees that vest go to the attorneys. He didn't waiver on that. He decided that at the initial hearing, when he terminated us and said that we were now parties in the case, he reiterated that in the motion for clarification, where he said, look, this is what I awarded to counsel. He also did that in the fee board. And there's a two-year gap between the time that he said that he's vested in the attorneys and the time that this appeal was announced. And it's our request and our belief that what Judge Daffler did was appropriate because he was saying, look, even allowing for Gilbrook's and the case of Gilbrook versus Westminster, which they've been citing, even assignments in that case, absent, it was just absent of contractual assignments. It goes to the client. Now there was no discussion of, hey, there's no contractual assignments or anything like that. And what Judge Daffler actually said, it was in the oral argument that he identified, was he said, of course, attorneys see statutory belongs to the client and they see it in cases. He said also, but there's these other situations where they go to the attorneys. Well, but is this one of those situations where it goes to the attorney? Well, we believe that the situation does go to the attorneys for a couple of reasons. First of all, that original vesting rule where it vested with the attorneys that occurred in 2013, that was the law at the time. It wasn't appealed. And for the other reasons that we've identified that, you know, for, for, for equitable reasons, the defeats shouldn't go to the Cayman Islands. But when we, when we sit on appeal, we apply the law as it exists when we are deciding the case. So as we sit here today, the lawsuits say that the case belongs to the client and then it's up to the client and the firm regarding whatever contractual agreement. I agree. It says absolutely contractual assignment, which is an important phrase. Absolutely. Contractual assignment. It goes to the attorneys. It goes to the client and then, and then, and then an ultimate distribution is determined by contract. I think you see the case down below was kind of mindful of was at the time it wasn't a special note. Is there a contractual assignment? Is there not a contractual assignment? That would mean it goes to the plaintiffs. If there's, if there's nothing in the record that shows that there's a contractual assignment, it goes to the, to the, to the client. I'm out of time. I'm out of directions. I can't answer your question. Thank you. Three minutes. Thank you, Your Honor. If I may, if it pleases the court, I'd like to get back to the apportionment issue. Now, where we are on the issue of who these fees belong to? I think, Your Honor, the question there is, was the decision in U.S.B. Kim retroactive? I understand that this court makes decisions based on what the law is today. But the underlying issue is, was Kim a retroactive decision? And I think if you look at Kim as being something that was not retroactive, that the decision of the court previously that the fees belong to the attorneys should stand. So that is the decision prior to the last appeal. The form was the decision that was made in 2015. Is that correct? Right. So the decision that was made by Judge Ware as to fees was pre-Kim? That's correct. That was Judge Damblin's decision. Okay. Anything else, Counsel? Well, like I said, the apportionment issue is something I just want to get into. All right. If you insist. Your Honor, I will open it. Do you have any questions? I'm happy to answer them. No. I'd like to hear what you have to say about apportionment. Well, apportionment is determined by this court, and Judge Damblin turned around and said, two-sevenths, that's an apportionment. The rule simply is if the costs of action are interrelated, and in this case, they were highly interrelated, you can't look and divide it by those that you want and those that you didn't want. This court said, explain your work and don't use apportionment. I do not believe that Judge Damblin followed the mandate of this court. Well, what does he mean by that? He should have turned around and looked at the fees and looked at the costs of action. He already determined, detested Judge Ware, that they were interrelated, and he should have awarded the Lodestar as adjusted because the Lodestar is, by definition, the reasonable amount that the attorney should be paying. Is there a position that there should be no reduction? No, there were reductions, and those reductions reduced the Lodestar by over 25%. What my position is, and I think Mr. Burke's position also, is that the court can reduce it for improper billing and for unnecessary activity. Unnecessary activity would be activity related to issues, costs of action. But is it your position that the court can't reduce it based on the level of success? Oh, absolutely. The question there is, are they interrelated? If they're interrelated, you can't wipe out fees. That would have been incurred anyway. All right. Thank you, counsel. Thank you very much, Rochelle. Thank you to all counsel for your arguments. This case is submitted for decision. Oh, I'm sorry. I'm sorry. We've heard from so many lawyers. I'm sorry. All right. Counsel. So I just have two brief points for my rebuttal. The first point is the appeal is for the March 31st, 2015 order. That encompasses more than just what happened after the court divided the attorney's fees, which I don't think the court should have done that. It also resulted in this order for fees based on the work of the counsel's firm. And that order is a part of a defective process. And that's our appeal. That issue is conceded as far as I can tell. And I don't want to go through my whole brief again. But your argument is all of the fees belong to the plaintiff. Is that what you're saying? Of the attorney? That's a separate question. I was just hearing what I'm saying. Fundamentally, legally, the process that we, that was used to get to the court was incorrect. It was the budget. She had been allowed to represent us up after the lawyers were working. The lawyers had no business being in court. And so everything that followed from that, which was prejudicial, has to be vacated. It's complicated by the fact that Mr. Patrick didn't file anything. I don't think so. I mean, there's, that's the second part of this that I mean, as you said, okay, well, there's no real prejudice here. It came out pretty well for him. So we're going to say, it's all right. We will look at the, his part of it separately. And I think, yeah, just where I'm saying that the problem with that is that the judge affidavit did not comply with the mandate of the court. The mandate of the court was to look at the motions and tell us why you're reducing them. The court didn't say, you know, let's do a new proceeding because they sell, sell your work, right? Yes. And in terms of like who owns the fees, that's kind of a side issue. I mean, the reason why it's important here is what are the lawyers doing in this court?  they're not part of this case. The fees belong to Mr. Lawyers. They're, they're creditors. They don't have to be on you. There's no way to be filed. They haven't been granted a due period. There's no meekness application. They're just interposing them. So that's how the Gilbert case got into the breeze. I mean, it's the right. It's the proper. Yes. Aspect. He's the, the compatibility. And my second point is Mr. Bernie. When we came to that, it's different now. And at some point, that affects on this corporate role. As far as the Gilbert case, the Gilbert case was decided in 1999. And I went to the library the last week to check to see if there's any change in what the status of the law is. And there's not a civil rights case. The interior space award belongs to a client. And the lawyer, the lawyers are supposed to have proper classrooms. So they can put the client here by a sign. So they don't have to give police rights to the interior space. They're going to be in their own. You can have an effective lien. Absent that the lawyers get violence. I'll see if there's other ways for lawyers to protect themselves. There's really not anything for this court to be concerned about. I know your position is the whole thing should be wiped out. And the fee application should just be from Mr. Pageant. And we go from there and said, that's what you're urging us to do. You know, that's Mr. Pageant was not allowed to represent himself. I mean, the judge said he could represent himself. Everything that happened. The documents he submitted to the court. He wasn't representing himself. Well, documents were submitted on his behalf by his, by his own lawyers. And he also had his original motion on file. His original motion was now by him. It's all very strange. But I do think, I do think also that as far as the rule 41, that was, that was just words the judge used. I mean, you have to look at what was the actual effect of it. I mean, that I don't find any authority that said you can, you can't, you can't divide rights and the state, the kind of spying right to a fraternity speed apartment. When you need to find it. Separately available. It just doesn't make any sense. If the judge orders. You think it's appropriate for the litigant to just ignore them? Well, Mr. Patrick was having an awful tough time getting his records from his office. He's got these orders. Send me my PDFs. I can, I can already represent myself. You know, I'm doing these messages three or four times in a minute. Anything ever came up? All right. Council. I think we heard from everyone. Thank you all for your helpful. All right. It's the case. Just it is. It's a bit for a decision by the court. Very interesting case. We'll be in. Thank you. Thank you.
judges: Schroeder, Rawlinson, Drain